UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
FRANKIE LEE McCRAY,

                        Petitioner,            **REPORT AND RECOMMENDATION**

      -against-

                                          07 Civ. 6589 (DAB) (GAY)

ROBERT ERCOLE,

                        Respondent.
--------------------------------------------------------X

**TO THE HONORABLE DEBORAH A. BATTS, United States District Judge:**

**I.  Background**

      On February 4, 2003, following a non-jury trial before the Westchester County Court (Zambelli, J.), Frankie Lee McCray ("petitioner" or "McCray") was convicted of murder in the second degree, criminal possession of a weapon in the third degree, burglary in the second degree, robbery in the third degree, and criminal mischief. Petitioner's conviction stems from a series of crimes in Mt. Vernon, New York that spanned late December 2001. Following his conviction McCray was sentenced to concurrent terms of twenty five years to life (murder), three and a half to seven years (criminal possession of a weapon), one year (criminal mischief), and ten years (second felony offender). Petitioner remains incarcerated at Green Haven Correctional facility in Stormville New York.

**II.  Procedural History**

      Petitioner, by and through counsel, timely appealed the judgment of conviction to the Appellate Division, Second Department, on the grounds that: (1) the evidence

1

adduced at trial was legally insufficient to support his burglary conviction and (2) the sentence imposed by the trial court was harsh and excessive. McCray filed a supplemental brief challenging: (1) the admissibility of his statements to Mt. Vernon detectives; (2) the sufficiency of the evidence supporting his murder conviction and; (3) the effectiveness of trial counsel. The Second Department, by Decision and Order dated October 17, 2006, affirmed the judgment of conviction.  People v. McCray, 33 A.D.3d 817, 822 N.Y.S.2d 603 (N.Y. App. Div. 2006). The New York Court of Appeals denied petitioner leave to appeal on February 22, 2007. People v. McCray, 8 N.Y.3d 882, 832 N.Y.S.2d 495 (N.Y. 2007).

On or about June 19, 2007, McCray filed the instant Petition for a Writ of Habeas Corpus, seeking relief on the following grounds:(1) petitioner's confession was improperly admitted at trial because it was obtained after an illegal arrest; (2) the authorities' violations of the Uniform Criminal Extradition Act ("UCEA") deprived petitioner of his Sixth Amendment right to counsel; (3) petitioner's inculpatory statements to detectives were obtained in violation of the Fifth Amendment; and (4) petitioner's attorney rendered ineffective assistance of counsel.

## III. Non-Cognizable Claims

(A) Fourth Amendment Claims[1]

This Court is barred from considering petitioner's Fourth Amendment claims. Federal courts may not review Fourth Amendment habeas claims where the state

---

[1]Respondent's brief asserts that petitioner challenged the evidentiary standards employed by the trial court in determining the probable cause issue. However, the evidentiary issues identified by respondent's brief are not separate claims but simply iterations of petitioner's Fourth Amendment arguments.

provided the petitioner a "full and fair opportunity" to litigate these issues. Stone v. Powell, 428 U.S. 465, 494 (1976). In this Circuit, review of Fourth Amendment claims is only appropriate where, "(a) [t]he state has provided no corrective procedures at all to redress the alleged fourth amendment violations or (b) [ ] the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992). Since New York provides defendants with adequate procedures to redress Fourth Amendment violations, this Court may only review petitioner's claims if there was an unconscionable breakdown in these corrective mechanisms. See id. ("Federal courts have approved New York's procedure for litigating Fourth Amendment claims."); Daily v. New York, 388 F. Supp. 2d 238, 249 (S.D.N.Y. 2005) (New York provides adequate procedures to redress alleged Fourth Amendment violations).

In the instant case, the petitioner does not argue and the facts fail to reveal an unconscionable breakdown in the corrective process necessitating habeas review. Prior to his conviction the trial court conducted a series of hearings where McCray challenged the legality of his arrest. After the hearings the court rejected petitioner's contention that his arrest was based on insufficient probable cause. See Decision and Order, attached as Exhibit 6 to Respondent's Record of Exhibits,[2] at 6. On appeal, the Second Department rejected McCray's claim that his arrest violated the Fourth Amendment. McCray, 33 A.D.3d at 818. Since petitioner was provided with and took advantage of

---

[2]Hereinafter, all citations to "Exh. __," unless otherwise noted, refer to exhibits attached to Respondent's Record of Exhibits.

multiple forums for vindicating his Fourth Amendment rights there was not an unconscionable breakdown in the corrective process. See Cappellan, 975 F.2d at 72 (Appellate Division's issuance of a summary affirmance of defendant's convictions was not an unconscionable breakdown); Benton v. Brown, 537 F. Supp. 2d 584, 591 (S.D.N.Y. 2008)(no unconscionable breakdown because petitioner's claims were reviewed in pre-trial hearing and on appeal). Accordingly, it is respectfully recommended that McCray's Fourth Amendment claims should be denied.

    (B) UCEA Violations

This Court is also barred from considering petitioner's claims that are predicated on alleged violations of the Uniform Criminal Extradition Act ("UCEA"). Habeas petitions are not the appropriate vehicle for challenging state court applications of state law. See Ponnapula v. Spitzer, 297 F.3d 172, 182 (2d Cir. 2002); 28 U.S.C. § 2254(a). As the Supreme Court explained "[i]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 68 (1991). Thus, "every error of state law cannot be transmogrified by artful argumentation into a constitutional violation." Ponnapula, 297 F.3d at 182 (quoting Sanna v. Dipaolo, 265 F.3d 1, 12 (1st Cir. 2001)).

In the instant action the petitioner, through "artful argumentation," attempts to transform what is essentially a state law issue into a Constitutional question. The UCEA, the statute at the heart of petitioner's claim, outlines the procedures for arresting a person charged with a crime in another state. See N.Y CRIM. PROC. LAW § 570.34 (2009); N.C. GEN. STAT. § 15A-734 (1973). McCray claims that Mt. Vernon detectives acting in conjunction with North Carolina authorities violated the UCEA in order to

deprive him of his Sixth Amendment right to counsel. Specifically, petitioner asserts that, pursuant to the UCEA, he should have been charged with a crime in New York prior to his arrest in North Carolina. McCray reasons that if he had been charged with a crime in New York, as was allegedly required, his Sixth Amendment right to counsel would have attached at the time the charging instrument was filed. Petitioner also alleges that after his arrest and pursuant to the UCEA the authorities should have immediately presented him before a magistrate. Petitioner argues that by virtue of his presentment before a magistrate his Sixth Amendment right to counsel would have attached. As a result of these alleged violations McCray claims that he was deprived of his Sixth Amendment right to have counsel present during questioning. In rejecting the petitioner's argument the Second Department held that the provisions of the UCEA did not apply to McCray. McCray, 33 A.D.2d at 818.

Petitioner's Sixth Amendment claim is inextricably tied to the provisions of the UCEA. In assessing McCray's claim, this Court would have to examine the Second Department's holding on the statute's applicability. An inquiry of this nature would require this Court to reexamine a state court's determination of state law. This is precisely the type of inquiry that is outside the province of federal habeas review. See McGuire, 502 U.S. at 68. Accordingly, it is respectfully recommended that petitioner's UCEA claims should be denied.

IV. **Cognizable Claims**

(A) Standard Of Review

This Court's review of the petitioner's Fifth and Sixth Amendment claims is guided by The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

5

AEDPA imposes a deferential standard of review on federal courts considering habeas corpus claims that were previously adjudicated on the merits in state court. Pursuant to the statute a federal court may only vacate a state conviction if it was either: (1)"contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. §2254(d)(1)-(2).

Since the petitioner does not assert that his conviction was based on an unreasonable determination of the facts, I need only consider the provisions of §2254(d)(1). Under §2254(d)(1) a state court's decision is "contrary to" clearly established federal law if: (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme Court of the United States] on a question of law"; or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that reached by the Supreme Court of the United States]." Williams v. Taylor, 529 U.S. 362, 405 (2000).  As to the "unreasonable application" prong of 2254(d)(1), "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A state court's decision involves an "unreasonable application" of Supreme Court precedent if (1) "the state court identifies the correct legal rule from [Federal Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or (2) "the state court either unreasonably extends a legal principle from [Federal Supreme Court]

6

precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.

    (B) Fifth Amendment Claims

Petitioner's claim that his initial confession was obtained in violation of Miranda and that his subsequent confession was inadmissible lacks merit. The record reveals that when Mt. Vernon detectives informed McCray that they were "here to interview him [petitioner] about the death of his girlfriend" he interrupted them and immediately confessed. See Exh. 6, at 5. Petitioner asserts that this initial exchange was an interrogation and thus, the detectives' failure to apprise him of his Miranda rights violated the Fifth Amendment. Petitioner reasons that since he was still under the influence of this illegal interrogation his subsequent videotaped confession was involuntary and inadmissible at trial. In assessing petitioner's claim the state courts held that McCray's initial confession was spontaneous and not the byproduct of an interrogation. McCray, 33 A.D.3d at 818.

The success of McCray's petition hinges on whether the Second Department's analysis of the Fifth Amendment claims involved a contrary or unreasonable application of Miranda and its progeny. In Miranda v. Arizona, the Supreme Court held that due to the inherently coercive nature of custodial interrogations, law enforcement must advise suspects of their constitutional rights prior to questioning. Dickerson v. U.S., 530 U.S. 428, 435 (2000). These warnings are only required when the suspect is in "custody" and subjected to an "interrogation." See Georgison v. Donelli, 588 F.3d 145, 155 (2d Cir. 2009) (internal citations omitted). In this case there is no dispute that the petitioner was in custody at the time of his initial confession. Therefore, I need only decide whether the

Second Department's determination that McCray was not interrogated at the time of his initial confession involved a contrary or unreasonable application of federal law.

The seminal case analyzing the definition of interrogation within the context of Miranda is Rhode Island v. Innis, 446 U.S. 291 (1980). In Innis, the Supreme Court defined interrogation as express questioning or its functional equivalent. Id. at 300-01. The functional equivalent of express questioning includes "any words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response from the suspect." Id. at 301. However, police conduct is not the functional equivalent of interrogation simply because it struck a responsive cord. Acosta v. Artuz, 575 F.3d 177, 190 (2d Cir. 2009). In expounding upon Innis the Second Circuit recently explained that a police officer's statements to a suspect regarding the "results of a lineup or other inculpatory evidence possessed by the police, without more" does not constitute interrogation. Id. at 191.

In this case, at the time of his initial confession, the detectives simply stated the purpose of their visit at which point McCray interrupted them and began discussing the circumstances surrounding the victim's death. See Exh. 6, at 5. Since a police officer's recitation of incriminating evidence against a suspect does not constitute interrogation, the Mt. Vernon detectives' more innocuous statements about the purpose of their visit was not an interrogation. See Isasi v. Herbert, No. 04-3979, 2006 WL 897925, at *1 (2d Cir. Mar. 29, 2006) (confession was not the product of interrogation when uttered after detective stated that he was meeting with the suspect to discuss the circumstances of the crime). Therefore, the Second Department's holding that petitioner's initial confession was not the product of an interrogation did not involve a contrary or

unreasonable application of Miranda.

Petitioner's challenge to the admissibility of the videotaped confession rests on the illegality of his initial confession. Since McCray's initial confession did not violate Miranda he was not under the influence of an illegal interrogation at the time of his videotaped confession. Accordingly, admitting petitioner's confession into evidence did not involve a contrary or unreasonable application of Fifth Amendment doctrine. As such, it is respectfully recommended that this claim should be denied.

(C) Sixth Amendment Ineffective Assistance Of Counsel Claims

Petitioner's Sixth Amendment claims are without merit. McCray's ineffective assistance of counsel claim is predicated on five grounds: (1) trial counsel's summation was deficient; (2) counsel ineffectively cross-examined Dr. Roh, the Medical Examiner ("M.E."); (3) counsel failed to call a forensic medicine expert; (4) counsel did not request an accident defense charge; and (5) counsel improperly stipulated to the facts surrounding petitioner's arrest in North Carolina. In summary fashion the Second Department rejected petitioner's ineffective assistance of counsel claims.

In order to prevail on his ineffective assistance of counsel claims petitioner must demonstrate: (1) that his attorney's performance "fell below an objective standard of reasonableness" and (2) that there is a "reasonable probability" that, but for counsel's error, "the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984). In applying Strickland there is a strong presumption that "counsel's conduct fell within the wide range of reasonable professional assistance." U.S. v. Caracappa, 614 F.3d 30, 46 (2d Cir. 2010)(internal quotations omitted). Thus, "[t]he Strickland standard is rigorous, and the great majority

of habeas petitions that allege constitutionally ineffective counsel founder on that standard." Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001). Where as in this case, the state court failed to articulate its rationale for rejecting petitioner's ineffective assistance claims, habeas review focuses on whether the state court's decision would be reasonable under Strickland. Eze v. Senkowski, 321 F.3d 110, 125 (2d Cir. 2003).

(1) Summation

Petitioner argues that in summation trial counsel did not effectively tie together the accident and justification aspects of the defense. McCray further asserts that his attorney's closing was deficient because counsel failed to mention the alleged inconsistencies in the medical examiner's testimony. The Second Department's rejection of these claims did not involve a contrary or unreasonable application of federal law.

Yarborough v. Gentry provides the relevant law for assessing an ineffective assistance of counsel claim predicated on an attorney's summation. 540 U.S. 1 (2003)(per curiam). In Yarborough, the Supreme Court explained that judicial review of summations is highly deferential because there are many reasonable answers to the questions of which issues to sharpen at closing and how to best clarify them for the trier of fact. Id. at 6.  Based on the record, the Second Department properly applied this deferential standard in assessing petitioner's ineffective assistance of counsel claim. During summation trial counsel raised the accident and justification aspects of petitioner's defense. See Trial Tr. 480-87. Thus, the Second Department properly rejected petitioner's invitation to delve into the nuances of counsel's tactical decisions on the best strategy for sharpening and clarifying the accident defense.

Petitioner also argues that trial counsel's summation was ineffective because his attorney failed to emphasize the alleged inconsistencies in the M.E.'s testimony. However, a review of the record contradicts McCray's assertions. See Trial Tr. 482-87. Again, the Second Department properly avoided a retrospective analysis of trial counsel's tactical decisions about how to best present the evidence at summation. Accordingly, petitioner's claim that his attorney's summation was ineffective is without merit.

(2) Ineffective Cross-Examination

Petitioner asserts that his attorney's cross-examination of Dr. Roh was constitutionally infirm because a more probing examination would have buttressed the accident defense. Specifically, McCray argues that his attorney should have questioned Dr. Roh about the nature and severity of the victim's injuries as well as the weapon which inflicted these wounds. Petitioner also claims that his counsel was ineffective for failing to exploit alleged inconsistencies in the M.E.'s direct testimony. The Second Department's rejection of these claims did not involve a contrary or unreasonable application of federal law.

When reviewing Strickland claims based on an attorney's allegedly deficient cross-examination, federal courts are deferential to trial counsel's strategic determinations as to the proper scope of questioning. The Second Circuit explained that "decisions whether to engage in cross-examination, and if so to what extent and in what manner, are [ ] strategic in nature." U.S. v Eisen, 974 F.2d 246, 265 (2d Cir. 1992). Since an attorney's decisions on the proper scope of cross-examination are strategic in nature they generally will not support ineffective assistance of counsel claims. See

11

Dunham v. Travis, 313 F.3d 724, 732 (2d Cir. 2002)(citing U.S. v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987)); U.S. v. Luciano, 158 F.3d 655, 660 (2d Cir. 1998).

Petitioner's claim that counsel ineffectively advanced the accident defense on cross-examination fails because his attorney could have made a reasonable strategic decision not to further probe the nature, severity, and instrumentality of the victim's injuries. During the direct examination the M.E. explained the nature and severity of each of the victim's wounds. Trial Tr. 424-27. Dr. Roh testified that some of the wounds were superficial while others caused more extensive damage. Id. Upon questioning by the trial judge Dr. Roh stated that none of the wounds would have caused instant death. Id. at 440-1. Finally, on direct and cross-examination Dr. Roh opined that both a knife and/or a pair of scissors could have caused the victim's injuries. Id. at 437-39. Given the record and straight forward nature of Dr. Roh's testimony, trial counsel could have reached a reasonable strategic decision that further questioning on the nature, severity, and instrumentality of the victim's injuries would have been superfluous. See Nersesian, 824 F.2d at 1321 (counsel could have made a strategic decision that there was no need for additional questioning and that continued probing of the witness would be counterproductive). Accordingly, in rejecting petitioner's claim the Second Department did not unreasonably defer to trial counsel's judgement.

McCray also appears to allege ineffective assistance based on the fact that trial counsel's cross-examination failed to emphasize inconsistencies in Dr. Roh's testimony. This claim rests on the premise that Dr. Roh testified that the stab wound to the victim's lung was not the fatal wound. Petitioner argues that this statement coupled with the fact that all of the victim's other wounds were "subcutaneous or relatively superficial"

represented fertile grounds for cross-examination that was inadequately exploited by trial counsel. However, the record reveals that Dr. Roh never testified that the lung wound was not fatal, he simply stated that the word fatal never appeared in the autopsy report. Trial Tr. 439-40. Petitioner also mistakenly asserts that the victim's remaining wounds were subcutaneous or relatively superficial. The record indicates that the victim suffered several wounds that were not superficial including a punctured larynx. Id. at 426. Therefore, petitioner's claim that trial counsel failed to exploit inconsistencies in Dr. Roh's testimony misstates the record. It is respectfully recommended that this claim should be denied.

    (3) <u>Failure To Call Forensic Pathologist</u>

In a related claim, McCray argues that defense counsel should have called a forensic medicine expert to rebut Dr. Roh's testimony. According to petitioner, this expert also would have bolstered the accident defense by testifying that there was only one fatal stab wound which could have been inflicted with only minimal force. McCray argues that testimony of this nature would have negated the prosecution's theory that the victim's cause of death demonstrated petitioner's homicidal intent. The Second Department did not erroneously apply federal law in rejecting these claims.

    Generally, decisions to call a witness are questions of trial strategy which appellate and habeas courts are "ill suited to second guess." <u>Luciano</u>, 158 F.3d at 660. Accordingly, "a failure to call a witness for tactical reasons of trial strategy does not satisfy the standard for ineffective assistance of counsel." <u>U.S. v. Eyman</u>, 313 F.3d 741, 743 (2d Cir. 2002). The failure to call a witness is particularly unlikely to constitute ineffective assistance in the absence of an affidavit or other evidence that the proposed

witness would have provided relevant testimony. Savinon v. Mazucca, 04 Civ. 1589, 2005 WL 2548032 at *33 (S.D.N.Y. Oct. 12, 2005). Thus, habeas relief will not lie based on petitioner's "vague hope that another witness would have reached a different result than the government expert." Leaks v. U.S., 841 F. Supp. 536, 545 (S.D.N.Y. 1994); Batchilly v. Nance, No. 08 Civ. 7150, 2010 WL 1253921 at *39 (S.D.N.Y. Apr. 2, 2010). In this case, petitioner failed to offer an affidavit or provide any other basis supporting his contention that there was a forensic expert whose testimony would have supported the defense. Accordingly, McCray's ineffective assistance of counsel claim fails because it is based on the vague hope that an expert witness would have bolstered petitioner's accident defense as well as contradict Dr. Roh's testimony.

(4) Accident Defense Charge[3]

The Second Department did not improperly apply federal law in rejecting petitioner's assertion that his counsel was ineffective for failing to request an accident defense charge. The respondent argues and this Court agrees that there is no accident defense in New York law. Furthermore, McCray fails to cite a single case or statute supporting the proposition that there is an accident defense. Since there is no accident defense in New York law, trial counsel was not ineffective for failing to request an accident defense charge.

(5) Stipulation

Finally, petitioner argues that he was deprived of effective assistance of counsel when his attorney entered into a factual stipulation with the prosecution. The record

---

[3]Petitioner was convicted in a non-jury trial. Given the absence of a jury, trial counsel could not have requested an accident defense charge.

reveals that the trial court conducted a <u>Huntley</u> hearing on November 17, 2001 to determine if there was probable cause for petitioner's arrest. Based on the testimony of Detective Glover of the Mt. Vernon police department the court determined that North Carolina authorities possessed adequate probable cause to detain the petitioner. On November 21, 2001 the trial court conducted another hearing to consider petitioner's <u>Payton</u> claim. During this hearing trial counsel entered a stipulation that allowed Detective Glover to provide additional details as to the sequence of events preceding petitioner's arrest. McCray argues that absent this stipulation the prosecution lacked adequate proof that his arrest was supported by probable cause.

      The Second Department's rejection of petitioner's claim was not contrary to federal law. Based on the record, the Second Department could have properly found that trial counsel's decision to enter into a stipulation was neither ineffective nor prejudicial. Petitioner's claim rests on the mistaken belief that absent the stipulation the trial judge would have held that authorities lacked probable cause for his arrest. However, at the time of the second hearing, the trial court had already ruled, based on Detective Glover's initial testimony, there was probable cause for petitioner's arrest. Trial Tr. 126. Given this sequence of events, the stipulation did not effect the trial court's probable cause determination. Since the stipulation had no bearing on the court's probable cause determination, the Second Department could have properly concluded that trial counsel's conduct was neither unreasonable nor prejudicial.

## V.  CONCLUSION

For the foregoing reasons, I respectfully recommend that the instant petition for a writ of habeas corpus be denied in its entirety.[4]

## VI. NOTICE

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 8(b)(3) of the Rules governing § 2254 proceedings, the parties shall have fourteen (14) days from the receipt of this Report to serve and file written objections to this Report and Recommendation. If copies of this Report are served upon the parties by mail, the parties shall have seventeen (17) days from receipt of this Report to file and serve written objections. See Rule 11 of the Rules governing § 2254 proceedings;  Fed. R. Civ. P. 6(d). Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Deborah A. Batts at the United States District Court, Southern District of New York, 500 Pearl St., New York, New York 10007, and to the chambers of the undersigned at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York 10601.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered. See Caidor v. Onondaga County, 517 F.3d 601, 604 (2d Cir. 2008).

---

[4]Attached to this Report and Recommendation are copies of all unpublished opinions and decisions available only in electronic form cited herein. See Lebron v. Sanders, 557 F.3d 76, 78 (2d Cir. 2009).

Requests for extensions of time to file objections must be made to the Honorable Deborah A. Batts and not to the undersigned.

Dated: December 16, 2010
White Plains, New York

Respectfully submitted,

_____
GEORGE A. YANTHIS, U.S.M.J.